# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

BAHAMA BAY II CONDOMINIUM
ASSOCIATION, INC.,

       Plaintiff/Counter-Defendant,      Case No:  6:17-cv-01800-CEM-KRS

v.

UNITED NATIONAL INSURANCE
COMPANY,

       Defendant/Counter-Plaintiff.
_____/

## DEFENDANT/COUNTER-PLAINTIFF'S OMNIBUS MOTION *IN LIMINE* AND INCORPORATED MEMORANDUM OF LAW

Defendant/Counter-Plaintiff, United National Insurance Company ("United National"), through its undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, Federal Rules of Evidence and Middle District of Florida Local Rule 3.01, files this Omnibus Motion *In Limine* and Incorporated Memorandum of Law.  United National seeks an *in limine* order barring plaintiff/counter-defendant, Bahama Bay II Condominium Association, Inc. ("Bahama Bay"), concerning the following:[1]

    1.    Characterizing the loss as a "Catastrophic Ground Cover Collapse";

    2.    References to bad faith conduct, policy premium, opinions concerning insurance, and other claims/cases;

    3.    Use of cumulative evidence;

    4.    Introducing any narrated, enhanced or modified evidence at trial;

    5.    Eliciting expert testimony on topics that were not included in its expert disclosures;

---

[1] As discussed below, Bahama Bay opposes all of the relief sought in this motion, except for an order prohibiting the use of cumulative evidence.

6. Introducing evidence and arguing for categories of damages that were not previously disclosed in its pleadings or written discovery responses; and

7. Seeking damages that are barred by summary judgment.

## FACTUAL BACKGROUND

### I. THE POLICY

United National issued a first-party commercial insurance policy (Policy No. MP0852459) to Bahama Bay for the March 26, 2016 to March 26, 2017 policy period (the "Policy"). A copy of the Policy is attached as Exhibit "A." The Policy provides commercial property insurance coverage to 13 separately-scheduled buildings located in Kissimmee, FL, subject to its terms, conditions, limitations, exclusions, and other provisions. *See* Policy, Bates Nos. UNIC00004 and UNIC00055-56. Each scheduled building is identified on the Policy by a separate address and separate premises number. *See id.*, Bates No. UNIC00056. Similarly, each scheduled building has its own separate limit of insurance. *See id.*, Bates No. UNIC00055. The Policy provides "Building" coverage only for each scheduled building. *See id.*, Bates Nos. UNIC00004 and UNIC00055. The Policy does not provide coverage for any loss of business income or extra expense.

The Policy's Florida Changes form (CP 01 25 07 08) states, in part, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

\* \* \*

**E.    Sinkhole Collapse Coverage Removed**

Sinkhole Collapse coverage is removed as indicated in Paragraphs **E.1.** through **E.4.**; and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **F**.

\* \* \*

    **3.**    In the Causes of Loss – Special Form, sinkhole collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement exclusion.

* * *

**F.**    The following is added to this Coverage Part as a Covered Cause of Loss. In the Causes of Loss – Special Form and Mortgageholders Errors and Omissions Coverage Form, the following is also added as a "specified cause of loss." However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**CATASTROPHIC GROUND COVER COLLAPSE**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

    **(a)**    The abrupt collapse of the ground cover;

    **(b)**    A depression in the ground cover clearly visible to the naked eye;

    **(c)**    Structural damage to the building, including the foundation; and

    **(d)**    The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

* * *

*See id.*, Bates Nos. UNIC00025-26.

    The above-cited Catastrophic Ground Cover Collapse ("CGCC") coverage provision is the ***only*** coverage available under the Policy for any type of loss or damage caused by or resulting from earth movement to Covered Property. In other words, the Policy does not provide coverage for sinkhole loss or any other form of earth movement. *See id.*, Bates Nos. UNIC00025-26 and 28.

3

## II. THE LOSS

According to Bahama Bay, on or about December 9, 2016, it discovered a sinkhole adjacent to Building 43, which is located at 9121 Calypso Court, Kissimmee, FL and is scheduled under the Policy as Premises No. 5. After the sinkhole opened, the Fire Marshal requested Osceola County to have Building 43 vacated, but did not condemn the building. No other buildings at the insured premises were condemned, declared unsafe, or ordered to be vacated as a result of the sinkhole.

On or about February 1, 2017, although the sinkhole and resulting damage did not meet all of the criteria for CGCC coverage under the Policy, United National agreed to extend coverage under the Policy for the claim with respect to "Covered Property" at Building 43 only, subject to the Policy's other terms, conditions, limitations, and exclusions. In this regard, United National issued payment of $290,000 to Bahama Bay as undisputed amounts for repair of damage to "Covered Property" at Building 43. Bahama Bay accepted and deposited the check and used the funds to install underpinning at Building 43, to hire security, and to pay its attorneys and public adjuster (Keys Claims Consultants, Inc.).

## III. THE PRESENT ACTION

On August 18, 2017, Bahama Bay filed its Complaint and Jury Trial Demand against United National in the Ninth Judicial Circuit, in and for Osceola County, Florida (Case No. 2017 CA 002162 OC). *See* Complaint [D.E. 2]. United National subsequently removed the action to this Court on October 18, 2017. *See* Notice of Removal [D.E. 1]. With this Court's permission, Bahama Bay subsequently filed its Amended Complaint and Jury Trial Demand [D.E. 22] on February 13, 2018 and then its Second Amended Complaint and Jury Trial Demand [D.E. 38] on August 16, 2018. The Second Amended Complaint remains the operative complaint.

The Second Amended Complaint contains five counts for breach of contract. Specifically, in Counts I and III-V, Bahama Bay is seeking coverage for alleged loss and damage to four buildings that are separately scheduled under the Policy, which are identified as follows:

| **Premises No.** | **Building Address** | **Building Number** |
|---|---|---|
| 7 | 9100 Calypso Court | 45 |
| 6 | 9111 Calypso Court | 44 |
| 5 | 9121 Calypso Court | 43 |
| 4 | 9131 Calypso Court | 42 |

*See* Second Amended Complaint, Counts I, III-V; *see also* Policy, Bates No. UNIC00056.

Furthermore, in Count II, Bahama Bay is seeking coverage for loss or damage to a "retaining wall." *See* Second Amended Complaint, Count II. The "retaining wall" is a free-standing wall that does not connect to any of the buildings at the insured premises. *See* United National's Motion for Summary Judgment, Exhibit "B" [D.E. 49-4], p. 96, lns. 17-25; p. 97, ln. 1; *see also* representative photographs of the "retaining wall" attached as Exhibit "F" [D.E. 49-8]. Also, despite not being pleaded within the Second Amended Complaint, Bahama Bay has claimed in its interrogatory responses that its damages include lost association fees on Building 43 and costs for security personnel and a security fence.

On October 23, 2017, United National filed its Counterclaim for Declaratory Relief [D.E. 5] (the "Counterclaim"). Specifically, the Counterclaim requests a declaration that there is no coverage available under the Policy for (a) the alleged loss or damage to Buildings 42, 44 and 45; (b) the security expenses; (c) remediation of land or interior damage to condominium units; and (d) the retaining wall. Additionally, on August 25, 2018, United National filed its Answer and Affirmative Defenses to the Second Amended Complaint [D.E. 25], in which it raises ten affirmative defenses.

**ARGUMENT**

I. **Use of the Phrase "Catastrophic Ground Cover Collapse"**

As an initial matter, United National seeks an order prohibiting Bahama Bay (including its counsel and its fact and expert witnesses) from referring to, describing or otherwise commenting upon, the loss at issue as a "catastrophic ground cover collapse."

This case is predicated upon the formation of a sinkhole adjacent to Building 43 at Bahama Bay's property and the alleged, resulting damage from the formation of that feature. As explained above, the Policy provides coverage for loss and/or damage caused by or resulting from only one specific type of ground movement, i.e. "catastrophic ground cover collapse." *See supra*. A "catastrophic ground cover collapse" is a defined term under the Policy, subject to the satisfaction of four, specific factors. *See* Policy, Bates No. UNIC00026.

Whether a "catastrophic ground cover collapse" exists at the property is a principal, unresolved issue for the jury, *i.e.* to determine if all factors under the Policy have been met for each specific building. Bahama Bay will argue at trial that it has suffered a catastrophic ground cover collapse to all four buildings at issue in this action. United National, on the other hand, contends that there is no coverage because all of the necessary factors under the Policy for a catastrophic ground cover collapse are not present. *See, e.g.*, Affidavit of Kate Wilkinson filed in support of United National's summary judgment motion [D.E. 49-1], ¶ 14 ("[A]lthough the sinkhole and resulting damage did not meet all of the criteria for Catastrophic Ground Cover Collapse coverage under the Policy…").

Notably, the same day that Bahama Bay discovered the hole adjacent to Building 43, it retained Geohazards, Inc., a geological engineering company, to evaluate the feature. In its report, Geohazards repeatedly refers to the feature as a "sinkhole," and does not use the phrase

6

"catastrophic ground cover collapse" a single time. A copy of the Geohazards report is attached as Exhibit "B." The geological engineering firm retained by United National during its investigation, Andreyev Engineering, Inc., similarly refers to the feature as a "sinkhole." *See* Andreyev's report attached as Exhibit "C."

Because the determination as to whether the event was a "catastrophic ground cover collapse" is one of the key issues for the jury to decide, Bahama Bay should not be permitted to refer to the sinkhole as a "catastrophic ground cover collapse." By repeatedly characterizing the loss as a "catastrophic ground cover collapse," Bahama Bay would be conditioning the jury to decide the issue in its favor without considering the evidence. As such, these references would be unduly prejudicial, misleading, and confusing to the jury. *See* Fed. R. Evid. 403. United National is also genuinely concerned that Bahama Bay may try to use the terms "catastrophic ground cover collapse" and "sinkhole" interchangeably, or in combination with one another as they did in their Second Amended Complaint when they described the event as a "catastrophic ground cover collapse sinkhole." *See, e.g.,* Second Amended Complaint [D.E. 38], ¶ 18. Accordingly, United National requests this Court enter an order precluding Bahama Bay (including its counsel and its fact and expert witnesses) from describing the sinkhole at issue in this matter as a "catastrophic ground cover collapse."

**II. References to Bad Faith Conduct, Policy Premium, Opinions Concerning Insurance, and Other Claims/Cases**

United National seeks an order barring Bahama Bay from eliciting testimony, introducing evidence, or making any comments concerning:

1. Alleged bad faith conduct by United National;

2. United National's claim handling practices;

    3.    The amount of premium charged by United National for the Policy or Bahama Bay's payment of the premium;

    4.    Personal opinions about insurance companies or why people purchase insurance; or

    5.    Other claims, cases, results (verdicts or settlements), or actions taken by insurance companies, including but not limited to United National, regarding other sinkhole or catastrophic ground cover collapse claims or cases.

Such comments are irrelevant under Fed. R. Evid. 401, and in any event should be precluded under Fed R. of Evid. 403.

In Florida, it is blackletter law that a bad faith action against an insurance company is not ripe until after the coverage action has been conclusively resolved. *See Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000). Additionally, it is well-established that an insurer's claim handling practices are irrelevant to an insurance coverage lawsuit. *See State Farm Fire & Cas. Co. v. Valido*, 662 So. 2d 1012, 1013 (Fla. 3d DCA 1995) ("manuals, guidelines and documents concerning [State Farm's] claim handling procedures were irrelevant to the first party dispute involved in this case").

Moreover, how insurers (including United National) handled other claims or cases, or the results of those cases, have no bearing on United National's coverage determination with respect to this case. The introduction of such evidence or argument would be unduly prejudicial to United National. The same holds true with respect to personal opinions about insurance companies or why people purchase insurance, as well as the calculation and payment of premium for insurance policies.

Notably, federal courts in Florida have routinely granted motions *in limine* barring evidence or commentary concerning the above-referenced topics. *See, e.g., Lumpuy v. Scottsdale Ins. Co.*, 2013 WL 1775048, at *3 (M.D. Fla. Apr. 25, 2013) (granting motion in limine to exclude all evidence or statements regarding defendant's claims handling practices and

procedures on the basis that it is irrelevant and unfairly prejudicial); *Williams v. Asplundh Tree Expert Co.*, 2006 WL 2868923, at *2 (M.D. Fla. Oct. 6, 2006) (finding evidence of the two prior lawsuits is inadmissible); *Woolbright v. GEICO Gen. Ins. Co.*, 2013 WL 12092078, at *2 (S.D. Fla. Feb. 5, 2013) (granting motion *in limine* precluding plaintiff's counsel "from eliciting testimony or making any reference related to personal opinions about insurance companies or opinions regarding why people purchase insurance."); *Summit Towers Condo. Ass'n, Inc. v. QBE Ins. Co.*, 2012 WL 12838460, at *2 (S.D. Fla. May 7, 2012) (granting defendant's motion in limine to exclude references to other insurance claims, affirmative defenses raised in other lawsuits and references to bad faith claims handling and/or good faith and fair dealing. Further stating, "What was done or not done in other cases is not admissible in this case until a proper predicate is laid for the admission of that evidence. … [Also], [t]his is not a bad faith case."); *Geico Cas. Co. v. Beauford*, 2007 WL 2412974, at *2 (M.D. Fla. Aug. 21, 2007) (agreeing that evidence of personal opinions regarding insurance companies, advertising tools used by insurance companies, payment of insurance premiums, and the financial positions of the parties is "probably not relevant").

For the reasons discussed above, United National respectfully requests an *in limine* order precluding Bahama Bay from eliciting testimony, introducing evidence, or making any comments concerning the above-referenced topics.

### III. <u>No Cumulative Evidence</u>

United National seeks an order prohibiting the use of cumulative evidence. Bahama Bay does not oppose the relief sought in this section of the motion.

There are numerous residents in the 13-building condominium complex governed by Bahama Bay. Furthermore, in addition to each party retaining three testifying expert witnesses,

there are multiple, pre-suit consultants that were retained by the parties, or independently sent by Osceola County, for the purpose of inspecting the subject sinkhole and resulting damage. Moreover, Bahama Bay retained a non-party security contractor to patrol Building 43 and the adjacent sinkhole after it formed. As a result, there are numerous individuals that have overlapping knowledge, observations and/or opinions about the subject loss and/or damage. In this same context, there are dozens of overlapping documents discussing the same.

Until the parties exchange witness lists and exhibit lists (which have not yet been done), United National is unsure whether Bahama Bay intends to call overlapping witnesses or to introduce overlapping documentary evidence. Thus, to the extent that Bahama Bay does intend to introduce cumulative evidence, United National respectfully requests an order precluding Bahama Bay from doing so. *See, e.g., Goldstein v. Centocor*, 2007 WL 61913, at *2 (S.D. Fla. Jan. 5, 2007) ("the Court is charged with eliminating or reducing duplicative experts and/or testimony."); *Muzaffarr v. Ross Dress for Less, Inc.*, 2013 WL 5311233, at *2 (S.D. Fla. Sept. 23, 2013) (granting motion *in limine* where plaintiff sought to call two physicians who would render substantively similar testimony as to the cause of the plaintiff's injuries and her prognosis). Of course, United National also agrees it will not introduce cumulative evidence. Accordingly, United National requests an appropriate order *in limine*.

## IV. Enhanced, Modified or Narrated Video and Photographs

During the course of this action, counsel for Bahama Bay disclosed to United National that it had created a virtual reality video which purportedly depicts the insured premises and the sinkhole adjacent to Building 43. United National has not been provided with a copy of that video. United National is similarly without knowledge of whether Bahama Bay has other enhanced videos, narrated videos or photographs that it intends to introduce at trial, as the

parties' exhibit lists are not yet due. Accordingly, United National seeks an order *in limine* precluding introduction of that video, as well as any other virtual reality videos, narrated videos, or any other video or photographs that have been technically enhanced or modified and which were not provided to United National during discovery.[2]

As a preliminary matter, Fed. R. Civ. P. 37(c)(1) mandates, in part, that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Indeed, since the discovery period expired roughly 4 months ago, Bahama Bay has missed its opportunity to provide United National with any enhanced or modified evidence that it may seek to use at trial. Further, to allow Bahama Bay to introduce its virtual reality video, narrated or other enhanced videos or photographs would be unduly prejudicial and severely mislead the jury concerning the physical conditions at the insured premises. *See U.S. v. Cobb*, 2008 WL 2002546, at *3 (S.D. Ohio May 7, 2008), aff'd, 397 F. App'x 128 (6th Cir. 2010) (agreeing that enhanced or altered photographs and videos that compromise the relevant characteristics of the original depictions such that the images are no longer reliable can result in an inaccurate representation.). Moreover, to the extent Bahama Bay were to offer a narrated video, the narrative would qualify as hearsay. *See* Fed. R. Evid. 801. As such, United National respectfully requests an order *in limine* concerning this potential evidence.

V. **Limiting Expert Testimony To Their Reports**

United National seeks an order that limits the scope of testimony of Bahama Bay's expert witnesses to the specific matters identified in their respective expert reports.

---

[2] United National reserves its right to object to the introduction of videos and photographic evidence on other grounds, should there be any other videos or photographic evidence that Bahama Bay seeks to introduce at trial.

Pursuant to Fed. R. Civ. P. 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Additionally, under Rule 26(a)(2)(B), if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony, the disclosures must be accompanied by a report that addresses six specific categories of information.

"[T]he expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). Failure to comply with Rule 26(a) has significant consequences, including the "self-executing sanction" found within Fed. R. Civ. P. 37. Specifically, pursuant to Rule 37, an expert witness may **not testify to subject matter beyond the scope of the witness's expert report**. *See also Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co., Ltd.*, 2011 WL 6372198, at *3 (S.D. Fla. Dec. 20, 2011) ("Federal Rule of Civil Procedure 37 provides the consequences for failing to comply with the expert witness disclosure requirements: the party is 'not allowed' to use that witness 'to supply evidence' at a trial …."). The federal courts routinely exclude expert testimony that is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense. *See id.*

"A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *See id.* (quoting *Morin v. U.S.*, 534 F. Supp. 2d 1179, 1189 (D. Nev. 2005)). When a scheduling order provides for expert witness disclosures, "such disclosures must be made 'at the time and in the sequence directed by the court.'" *Kendall Lakes*, 2011 WL 6372198, at *3 (quoting *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 2005 WL 1300763, at *1 (N.D. Ill. Feb. 22, 2005)).

In this case, Bahama Bay has identified three testifying expert witnesses under Federal Rule of Civil Procedure 26(a)(2): James Funderburk, P.G., P.E.; Byron K. Anderson, P.E.; and Dennis James, CBC. Bahama Bay has already alluded to the fact that it may solicit expert testimony from its experts that is beyond the scope of their retention and topics addressed in their respective reports. Notably, at the end of Mr. Anderson's expert report, he states that "[o]ur findings and conclusions are limited to the specific areas mentioned for the above referenced project at the time of inspection and **for the structural items contained herein only**." *See* B. Anderson Expert Report (without exhibits) attached as Exhibit "D", p. 23 of 23 (emphasis added). Furthermore, during his deposition, Mr. Anderson confirmed that he has not been retained to provide an expert opinion about the geology of the sinkhole. *See* excerpt of deposition of B. Anderson, attached as Exhibit "E," p. 115, lns. 10-12 ("Q: Are you planning to offer testimony in this case about the geology of the sinkhole? A: No, I am not."). Yet, in response to United National's Motion for Summary Judgment, Bahama Bay attached an affidavit from Mr. Anderson opining about the geological conditions at Building 43 and challenging the opinions of United National's geotechnical expert, Michael Oakland, PhD, P.E. *See* Affidavit of B. Anderson [D.E. 53-16].

Under established law, Bahama Bay's experts must be precluded from testifying to any matters that are not specifically identified in their respective reports. *See, e.g., Welsh v. Newman Int'l Transp., Inc.*, 2011 WL 5570800, at *3 (M.D. Fla. Nov. 16, 2011) (excluding defendant's disclosed expert witnesses from testifying about, remarking on, or introducing any evidence outside the scope of their pretrial Expert Witness Disclosures); *Kaufman v. Pfizer Pharm., Inc.*, 2011 WL 10501233, at *2 (S.D. Fla. Aug. 10, 2011) ("If Plaintiff wanted to offer Dr. Parisian to testify as an interlocutor between the jury and the FDA, Plaintiff should have: (1) made that clear

13

in her expert disclosures and … (2) specified with some precision the scope of her expert testimony on these subjects and its bases. Plaintiff did neither as to any of the proposed areas of testimony.").

To allow Bahama Bay's experts to testify on topics that are not specifically discussed in their respective reports would essentially eviscerate the *sine qua non* of pretrial, expert disclosures and the Court's scheduling order. Accordingly, an order *in limine* must be entered that limits the scope of testimony of Bahama Bay's expert witnesses to the specific matters discussed or identified in their respective Rule 26(a)(2)(B) reports.

### VI. Undisclosed Damages

United National seeks an order *in limine* precluding Bahama Bay from seeking any damages or expenses not expressly stated in its Second Amended Complaint or written interrogatory responses. To allow otherwise would unequivocally and unfairly prejudice the defendant. *See, e.g., Dade County Federal Credit Union v. Cumis Ins. Society, Inc.*, 2011 WL 13100780, at *2 (S.D. Fla. Sept. 22, 2011) (the introduction of the damages not disclosed during the discovery period would unduly prejudice the defendant and delay the proceedings).

The scope of damages being claimed by Bahama Bay in this action has been a moving target. For example, in its Second Amended Complaint, Bahama Bay alleges that it is seeking temporary and permanent repair costs to Buildings 42-45 and the freestanding retaining wall, and for 24-hour security expenses at Building 43. *See* Second Amended Complaint, ¶¶ 22, 35, 49, 63, and 77. Yet, in response to United National's Second Set of Interrogatories, Bahama Bay provided a different answer (after first objecting on meritless grounds to the question as "compound, overbroad and vague"), stating that its damages consist of "lost rental revenues on Building 43; Osceola County 24-hour mandatory security charges and subsequent security fence

14

rental; lost association fees on Building 43." *See* Bahama Bay's Second Amended Answers and Objections to United National's Second Set of Interrogatories, Interrogatory No. 19, attached as Exhibit "F".[3]

Due to the inconsistency between the allegations of the Second Amended Complaint and Bahama Bay's sworn interrogatory responses, it is not entirely clear what damages are being sought by Bahama Bay in this action. Nevertheless, an order *in limine* should be entered precluding Bahama Bay from seeking any damages or expenses beyond those that have been disclosed in its Second Amended Complaint or written interrogatory response.

## VII. Damages Barred by Summary Judgment

As discussed herein, United National has filed a Motion for Summary Judgment [D.E. 49] that remains pending before the Court. In relevant part, the motion seeks a ruling that there is no coverage available under the Policy for damage to property that is not "Covered Property," including (a) monetary losses or expenses; (b) patios and paved surfaces; (c) the cost of excavations, grading, backfilling or filling; (d) foundations; (e) land; (f) condominium unit owner property; (g) the freestanding retaining wall; (h) fences; and (i) landscaping. Moreover, the Motion for Summary Judgment seeks a ruling that Bahama Bay is not entitled to coverage under the Policy for building components[4] that did not sustain any direct physical loss or damage due to the sinkhole for "matching" purposes.

To the extent that the Court grants summary judgment on any or all of these issues, United National seeks an order *in limine* precluding Bahama Bay (and its counsel and witnesses) from making references to these categories of claimed damages. To allow otherwise be unduly prejudicial, misleading, and confusing to the jury. *See* Fed. R. Evid. 403.

---

[3] As discussed in United National's summary judgment motion, Bahama Bay has withdrawn its claim for lost rent.

[4] Interior items such as carpeting, tile flooring, and paint, and exterior items such as paint and brick pavers.

15

**WHEREFORE**, defendant, United National Insurance Company, respectfully requests that the Court enter an Order granting this Omnibus Motion *In Limine* in its entirety.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), I hereby certify that counsel for the movant has conferred with counsel for all opposing parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues, except for prohibiting the use of cumulative evidence.

Dated: March 1, 2019
Fort Lauderdale, FL

           LITCHFIELD CAVO LLP

By:   s/ Jason M. Chodos
      Jason M. Chodos, Esq. (FL Bar No. 025823)
      chodos@litchfieldcavo.com
      Dana B. Kuczynski, Esq. (FL Bar No. 1002612)
      kuczynski@litchfieldcavo.com
      600 Corporate Drive, Suite 600
      Fort Lauderdale, Florida 33334
      Tel.: (954) 689-3000
      Fax: (954) 689-3001
      *Attorneys for Defendant/Counter-Plaintiff,*
      *United National Insurance Company*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BAHAMA BAY II CONDOMINIUM
ASSOCIATION, INC.,

        Plaintiff/Counter-Defendant,    Case No: 6:17-cv-01800-CEM-KRS

v.

UNITED NATIONAL INSURANCE
COMPANY,

        Defendant/Counter-Plaintiff.
_____/

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 1, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        s/ Jason M. Chodos
        Jason M. Chodos (Fla. Bar No. 025823)
        chodos@litchfieldcavo.com
        Litchfield Cavo LLP
        600 Corporate Drive, Suite 600
        Fort Lauderdale, FL 33334
        Tel.: (954) 689-3000
        Fax: (954) 689-3001
        *Counsel for Defendant/Counter-Plaintiff,*
        *United National Insurance Company*

**SERVICE LIST**

**Bahama Bay II Condo. Ass'n, Inc. v. United National Ins. Co.**

Case No: 6:17-cv-01800-CEM-KRS

**United States District Court, Middle District of Florida**

Theodore A. Corless, Esq.
Mary Catherine Lamoureux, Esq.
Corless Barfield Trial Group, LLC
6812 W. Linebaugh Avenue
Tampa, FL 33625
Tel.: (813) 258-4998
Fax: (813) 258-4988
*Counsel for Plaintiff/Counter-Defendant,*
*Bahama Bay II Condo. Ass'n, Inc.*
Served via transmission of Notice of
Electronic Filing generated by CM/ECF

Alina Alonso Rodriguez, Esq.
BOWMAN AND BROOKE LLP
Two Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
Tel.: (305) 995-5600
Fax: (305) 665-6100
*Counsel for Defendant/Counter-Plaintiff,*
*United National Insurance Company*
Served via transmission of Notice of
Electronic Filing generated by CM/ECF